C. K. OLDHAM'S TRUSTEE *v.* THOMAS R. HUME ET AL.

[Abstract Kentucky Law Reporter, Vol. 4—355.]

**Principal and Trustee.**

A trustee holding property in trust, finding that his title is worthless, can not purchase an adverse claim and acquire a title in his individual right. It is a breach of trust for a trustee to create any relation between himself and the trust property whereby he would be induced to look to his own interests at the expense of the beneficiary of the trust.

**Contract by Public Officer to Allow Deputy Sole Authority is Void.**

A public officer can not contract with his deputy and his own bondsmen to permit the deputy to have and collect all the revenues of his office, but where he is a defaulter and his sureties are liable thereunder and are induced to go on his bond for the next, upon his agreeing that the deputy shall handle the revenues of the office and pay up the defalcation, the bondsmen have a right to have the money collected applied to their claims.

APPEAL FROM MADISON COURT OF COMMON PLEAS.

October 26, 1882.

OPINION BY JUDGE PRYOR:

It is evident from the entire record that the trustee, Smith, exercised all the diligence required of him as trustee in collecting, or having collected, the taxes due the state and for which the sureties were bound, and also in collecting the fees or fee bills due and owing the sheriff. Dooly says that at a meeting of the sureties in regard to the tax books and the collection of taxes for the year 1873, it was agreed that Oldham should for a while proceed to collect what he could, and this conclusion seems to have resulted from the fact that no one could then be found who was willing to undertake the collection. It is true objections were made in a short time after that, when Hume and Sale took the books and attempted to make the collections. During the entire period Smith consulted the sureties and was evidently attempting to secure all the uncollected taxes and fees for their benefit, exercising all the diligence that could be required of him as trustee. Any greater degree of vigilance would have required him to undertake in person to collect the taxes and fees, and to do this he would have been compelled to qualify as deputy sheriff and abandon his own profession. If loss originated by reason of Oldham's proceeding to collect, it was as much the fault of the sureties as the trustee, but the fact is, all of them were trying to find a collector, and their failure to do so caused the delay in getting the books from Oldham, and the loss, if any, incurred by the sureties.

When Oldham gave up the books an inventory was made of all the fees, etc., due him, and Parks collected all he could and passed the same over. The fact that Smith may have made a mistake in his statement as to the real value of the fee bills, or the amount of the fees that were good, ought not to make him responsible for

more than was collected or that could have been collected by the exercise of the proper diligence, and it is not pretended that Parks and others did not collect and account for all the fees that could have been collected. The fact that Smith failed to undertake the trust and undertake the discharge of his duties for several weeks after the assignment was written, can not affect his liability. He was not compelled to accept it, and had the right to decline to assume the obligation at any time. We perceive no reason for disturbing the judgment on the cross appeal.

We must also concur in the judgment below upon the question involved upon the original appeal and in doing so it seems to us it is unnecessary to determine the question as to whether in point of law the thousand dollars was a part of the estate of Oldham when he made the assignment, and passed to the assignee by reason of its execution and acceptance. Parks undertook to collect the revenue for the year 1874, for Oldham, the sheriff, and by the terms of the agreement between Parks and Oldham, the former was to have the exclusive right to make the collections, and Oldham as sheriff was made subordinate to the deputy. Oldham was in default as sheriff for the year 1873, and the appellees, or some of them, who were his sureties for that year were induced to become bound as his sureties for the year 1874, upon the idea that Parks would collect the revenue, excluding Oldham from any right thereto, and appropriate to their benefit all the fees, commissions, etc., that Oldham was entitled to under the contract with Parks. Oldham was to have half the commissions. It is well established by the proof in the record that this arrangement between Oldham and Parks was the inducement for some of the appellees to become liable for the second time on his bond for the year 1874. Smith, it seems, was the attorney for Oldham, and advised with the sureties as to the best course to pursue, but whether he induced the sureties to go upon the bond by reason of having secured to them the ·fees and commissions of Oldham under the contract with Parks does not appear, and the presumption can not well be indulged that it was by his persuasion that they became a second time responsible. Shortly after this bond was executed, and after Parks had begun his collections, the sheriff, Oldham, made the assignment to the appellant, Smith, for the benefit of creditors, and upon the petition filed for a settlement of this trust, it was held by the court below that the contract between Oldham and Parks was void, because

in violation of Gen. Stat. (1881), Ch. 81, § 1, which provides that "No office or post of profit, trust, or honor under this commonwealth, * * * nor the deputation thereof, in whole or in part, shall be sold or let to farm by any person holding or expecting to hold the same." Section 2 of the same act provides that "every contract or security made or obtained in violation of the preceding section shall be void." The contract between Oldham and Parks being void, as by its terms Oldham was excluded from any right to collect, and had no other interest than to receive one-half the fees, could not have been enforced and, therefore, it is maintained no rights passed to the assignee under the assignment to the fees collected by Parks. Under this view of the law the appellant, Smith, who was the assignee of Oldham, having paid a debt to one Broaddus, for which he was liable as the surety of Oldham, took from Oldham a check, or from Parks by Oldham's consent, for the commission Oldham was entitled to under the contract with Parks amounting to $1,000, and applied it as a payment on the Broaddus debt, refusing to recognize it as a part of the trust fund for the reason already given and for the additional reason that the rotary and fees of a public office are not assignable. It appears from the record that Smith, the trustee, gave notice to Parks that he claimed this fund as a part of the trust estate and the presumption is that he must have known the arrangement made with the sureties and Oldham. Oldham agreed with the sureties that it would be applied to his debts and they were parties to the arrangement and although a different opinion is expressed by the chancellor below, it is expressly stated by two or more of the sureties in their depositions that this agreement with Parks, that the fees and commissions should be applied to the payment of their liabilities, was the inducement for them to sign the last bond, hoping thereby to realize something to indemnify them for the liabilities already incurred. While the contract can not be enforced as between Oldham and Parks it does not necessarily follow that the sheriff is without any remedy against Parks for his part of the fees, or that the securities have no equitable claim to this fund in the hands of Parks. It was the fees and commissions the securities were entitled to under the arrangement with Oldham and this constitutes the consideration for their assuming to be responsible for the acts of Oldham as sheriff. It might as well be argued that the revenue collected by Parks and that had been accounted for by the securities could not

be reached in the hands of Oldham or Parks by the sureties because of the void contract under which the collections were made. Here is a trustee, either with or without notice of the creditors' claim, who undertakes to appropriate a fund that was set apart by the debtor for the benefit of creditors, upon the ground that the contract under which the claim of the creditors originated was void. The creditor is claiming it as a part of the estate by the contract, or if that can not be enforced by reason of his equitable claim to the fund. There was no illegality in the sureties agreeing to accept the fees and commissions as the consideration for going upon the bond, but the illegality consists in the contract between Oldham and Parks by which this fund was to be obtained, and we are not prepared to say, although the sureties may have assented to the illegal contract, that they are affected to the same extent by reason of it that Oldham and Parks were, nor are we convinced that such an interest could not have been transferred to the sureties as a means of indemnity, but it is not necessary to pursue such a discussion or to determine these questions. These sureties were involved by reason of the acts of their principal and the collecting officers who then collected the fees due and owing the sheriff under the arrangement made by the appellant for the benefit of creditors. The very fees involved in this case, or the beneficial interest to the sheriff resulted from the execution of the bond by these sureties and upon the condition that they were to have the fees and commissions to secure them.

The trustee asserted his claim to this fund in the hands of Parks in behalf of creditors and notified Parks that they were entitled to it. Parks was so impressed with the idea that the fund belonged to them that he required Smith's consent as trustee, to be indorsed on the receipt to Oldham. The latter, instead of collecting the claim for creditors as he should have done, for Parks was willing to pay it over, resists the recovery upon the ground that the contract between Oldham and Parks, under which the creditors claim, was void, and admits that since he has accepted the trust he has collected these commissions, by the consent of Oldham, and appropriated them to the payment of debts for which he was liable as Oldham's surety. If the creditors had no claim to the fund by reason of any contract, and a case was presented where the property in no event could have passed to the assignee there might then be some reason for sustaining the position assumed by the

trustee. But here the appellant, by appropriating this fund, placed himself in direct antagonism to the creditor, and obtained that from the debtor that otherwise would have gone to the creditor. Instead of asserting the claim for creditors he is claiming against them. This can not be done. A trustee holding land in trust, finding that his title is worthless, can not purchase an adverse claim and acquire a title in his individual right. *McClanahan v. Henderson,* 2 A. K. Marsh. (Ky.) 388. It is said, however, that the appellant was not a trustee of this particular fund because the contract was void between the creditor and Oldham and passed nothing. This is the very question at issue. If a trustee is allowed to appropriate to his own use that which the creditor has failed to secure by reason of an illegal contract, or because the contract is so framed as to pass nothing, it tends to encourage the trustee to take care of his own private interests at the expense of those for whom he is acting and recognizes his right to place himself in a position hostile to the beneficiary with reference to the trust fund or what is regarded as the trust fund. That Oldham did attempt to pass this fund to the creditor is certain, and that Smith, as assignee of Oldham, asserted a claim for creditors is equally certain, and he will not be allowed to acquire an interest after the assignment, so as to acquire the property in his own right upon the idea that nothing passed to the creditor, or to him as assignee for the creditor. It was decided by this court in *Covington & Lexington Railroad Company v. Bowler,* 9 Bush (Ky.) 468, that it was a breach of trust on the part of a trustee to create any relation between himself and the trust property whereby it would induce him to look to his own interests at the expense of the beneficiary of the trust. Now whether it was trust property is one of the issues here, with the creditor insisting that it is and the trustee saying that it is not, and when it clearly appears that both the creditor and debtor regarded the fund as belonging to the creditor and but for the appropriation by the trustee, however honestly he may have acted, the fund must have gone to the creditor. This case illustrates the wisdom of the rule and the necessity for holding that the trustee can not place himself in a position hostile to the beneficiaries of the fund. The trustee finding that the contract was void seizes upon that which was regarded as assigned to creditors, and by an act hostile to the creditor obtains the property that the creditor would have obtained but for the action of the trustee and

whether the creditor could have enforced his claim in a court of law or equity under such circumstances as surround this case is a question concerning which the chancellor in the controversy between the trustee and the beneficiary will not stop to inquire.

Judgment *affirmed* on original and cross-appeal.

*W. B. Smith, Wm. Lindsay, for appellant.*

*C. F. & A. R. Burnam, for appellees.*

[Cited, *Eversole v. Holliday,* 131 Ky. 202.]

