# JANUARY TERM, 1909

CASE 19.—ACTION BY S. B. HOLLIDAY AGAINST JOHN B.
EVERSOLE FOR A SETTLEMENT AND ACCOUNT
ING AS DEPUTY SHERIFF.—January 7, 1909.

## Eversole v. Holliday

Appeal from Perry Circuit Court.

L. D. LEWIS, Circuit Judge.

Judgment for plaintiff. Defendant appeals and
plaintiff took a cross appeal—Affirmed.

1.  Contracts—Legality of Object—Trafficking in Public Offices.—
    An agreement that defendant would obtain the resignation of
    the sheriff for a money consideration, and cause plaintiff to
    be appointed to the vacancy, and that plaintiff would then
    appoint defendant as his deputy, is contrary to public policy,
    and void.
2.  Same—Defenses—Illegality.—In an action by a sheriff against
    his deputy for an accounting, it was no defense that the
    plaintiff held his position as the result of a corrupt agree-
    ment by which defendant was to obtain the resignation of
    the then sheriff for a money consideration and cause plaintiff
    to be appointed to the vacancy, and that plaintiff would then
    appoint defendant as his deputy.
3.  Appeal and Error—Findings—Conclusiveness on Conflicting
    Evidence.—Where the evidence was conflicting as to certain
    items and credits claimed by the parties, so as to make it
    doubtful whether they should be allowed, the judgment of
    the trial court will not be disturbed.

Eversole v. Holliday.

W. C. EVERSOLE, F. J. EVERSOLE and P. T. WHEELER for appellant.
WM. CROMWELL and MILLER & WARD for appellee.

OPINION OF THE COURT BY WM. ROGERS CLAY, Commissioner—Affirming.

In the year 1905 S. B. Holliday was sheriff of Perry county. John B. Eversole was selected as one of the deputies. Holliday instituted one action against Eversole for a settlement and accounting of the funds which went into the hands of Eversole as deputy sheriff. The amount he sought to recover was $1,343.26. Eversole denied his indebtedness to Holliday, and sought to recover on a counterclaim of $570.10. Holliday also instituted another action against Eversole to recover store accounts and other sums. During the progress of the case, Eversole pleaded that one E. H. Cornett was duly and legally elected sheriff of Perry county; that appellant and appellee agreed to and did pay said Cornett $500 to resign said office, with the agreement and understanding that the county judge, who was a brother of appellant, should appoint appellee to the vacancy, and that appellee should thereupon appoint appellant his deputy; that this contract was contrary to the statutes of the State and against public policy, and such as the courts of the State would not enforce. The case was referred to a special commissioner to hear proof and make settlement between the parties. The evidence was reduced to writing, and the commissioner reported in favor of Holliday, holding that he was entitled to recover of Eversole the sum of $374.77. Both Holliday and Eversole excepted to the commissioner's report, and upon final hearing the chancellor adjudged that Holliday was entitled to recover the sum of

$162.61. From that judgment, Eversole prosecutes this appeal, and Holliday also prosecutes a cross-appeal.

The chief contention of appellant is that the court erred in failing to find that all of Holliday's demands grew out of an immoral, corrupt, and unlawful contract with Eversole to buy out the sheriff's office by hiring Cornett to resign, and to divide the office between themselves by securing the appointment of Holliday as sheriff and Eversole as deputy, and in not dismissing Holliday's petition on the ground that a recovery was against public policy. In support of this contention we are referred to the case of Thomas Outon v. James Rodes, 3 A. K. Marsh. 432, 13 Am. Dec. 193. In that case John D. Young, who was clerk of the Fayette county court, farmed the office to Abner Fields for one year for the sum of $1,000. Before the end of the year for which Young had farmed the office to Fields, James Rodes hired the county clerk to resign; Rodes agreeing at the time with John D. Young, the clerk, to give Abner Fields the benefit of the contract he (Young) had with Fields for the office for the remainder of the year. Subsequently Rodes agreed to give Fields $400 for the remaining part of the time for which he had farmed the office of Young; Fields binding himself to do all the work until April, 1817. Rodes executed his notes to Abner Fields, and the latter assigned them to Outon and Hawes, who brought suit thereon and recovered judgment. Rodes subsequently filed a proceeding to enjoin collection of the notes on the ground that the contract was illegal and against public policy. This court in passing upon the question sustained Rodes' contention, and held that the contract was against public policy and void, and that no re-

covery could be had upon the notes in question. It will be observed that that case did not involve the question of whether or not the county court clerk could collect the sums which had passed into the hands of his deputy. The effect of that decision was to hold that the consideration for the unlawful contract could not be collected. In this case, if the question were whether or not a note given for the unlawful purchase of an office could be collected, we would have no hesitancy in holding that it could not be done; that, however, is not the case before us. Though the contract with Cornett may have been against public policy, the fact yet remains that Holiday was appointed sheriff and Eversole deputy sheriff. As such, they were public officers of the State, and subject to the laws thereof in the collection of, and accounting for, the revenues of the State. To hold that the sheriff could not require his deputy to settle because they both secured their office through an unlawful contract with another would indeed be a dangerous doctrine. The sheriff would be at the mercy of his deputy, and the Commonwealth would be in danger of losing its revenue. In the case of Oldham's Trustee v. Hume, etc., 4 Ky. Law Rep. 355, this court, in an opinion by Judge Prior, said:

"(1) The statute which provides that no office in this Commonwealth 'shall be sold or let to farm, by any person holding or expecting to hold the same,' was violated by a contract between a sheriff and his deputy, whereby the latter was to have the exclusive right to collect the fees of the office, and the principal was to have no other interest than to receive one-half of the fees, and the contract was therefore void.

"(2) Although such a contract is void, it does not necessarily follow that the sheriff is without any

remedy against the deputy for his part of the fees, or that the sureties of the sheriff, who were induced to become bound by reason of the contract, have no equitable claim to this fund in the hands of the deputy.''

Applying the rule above announced to the facts of this case, we are of opinion that, although the contract between appellant and appellee and E. H. Cornett was void as against public safety, the invalidity of that contract will not prevent a recovery by appellee for any sum that may have been due him by appellant upon a final accounting between them in their official capacity. That being the case, the facts set forth in defendant's amended answer and counterclaim constitute no defense to the petition.

It is further insisted by appellant that the chancellor erred in not giving him certain credits to which he was entitled. Appellee also contends that he ought to have recovered on certain items which were not allowed. Upon each of the disputed items the proof is conflicting and such as to leave the mind in doubt. Under such circumstances, the judgment of the chancellor will not be disturbed.

The judgment is therefore affirmed both on the original and cross appeal.