## Forbes et al. v. City of Ashland.

(Decided Nov. 25, 1932.)

670

FRANK C. MALIN and WILSON & ROBINSON for appellants.

JOHN T. DIEDERICH and R. CAMPBELL VAN SANT for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

The city of Ashland, Ky., is one of the second class, and its legislative department enacted the necessary ordinances to improve certain designated streets in the city at the expense of the abutting property owners. Specifications for the work were prepared and advertisements for bids were made, all according to law. Among the bids submitted was one by the appellants

M. I. Forbes, J. W. Bosley, and George Hunt, composing the partnership of Hunt-Forbes Construction Company, and which was ascertained by the city authorities to be the lowest and best bid, and it was agreed to be accepted. After that conclusion was reached and that determination made, the legislative department of the city passed an ordinance duly accepting it, but inserted therein section III, reading: "That the said Hunt-Forbes Construction Company shall accept the contract for the paving herein described with the understanding that the City of Ashland shall not be responsible or liable for any deficit caused by the value of the property abutting or fronting thereon not being sufficient to bear the assessment or any part thereof."

After some parleying and discussion, appellants as the successful bidders consented thereto, and a written contract was drawn containing the same exemption, and which was duly executed by both parties. The work of construction was then begun and in due time finished. Some of the property owners declined to accept the ten-year payment plan, and the assessments against their lots were enforced by actions in which it was manifested that the amount of the assessments exceeded 50 per cent. of the value of the lots as enhanced by the improvement, and which excesses in the aggregate amounted to $611.51. This action was later brought in the Boyd circuit court by appellants and plaintiffs below, against the appellee and defendant below, city of Ashland, to recover that amount, under the provisions of section 3096 of the 1930 Edition of Carroll's Kentucky Statutes, which is a part of the charter of cities of the second class, and which enacts in part: "Any assessment for any street improvement as provided in this section which exceeds one-half of the value of the lot or parcel of real estate upon which the assessment is made shall be void as to such excess, but the improvement shall be taken into consideration in fixing the value of such real estate, and the general council, or city commissioners shall provide for the payment of any such excess out of the general fund."

The answer of defendant expressly admitted all of the material allegations of the petition, but it relied on five other affirmative defenses pleaded by it in that many separate paragraphs, to some of which the court sustained a demurrer, and others it later withdrew of record, leaving only two, both of which are based upon

the exemption clause in the accepting ordinance, and the same as contained in the contract. One of those paragraphs to which the court overruled the demurrer filed thereto relied outright on the ordinance and its incorporated exemption clause in the contract, and which of course embodies the insistence that the exemption is valid; while the other paragraph, based upon the same facts, attempted to plead an estoppel against plaintiff to deny the validity of the city's exemption. The court overruled the demurrers filed to those two paragraphs, and plaintiff declined to plead further. The cause was then submitted to the court on the then condition of the pleadings, and it dismissed the petition, following which plaintiffs prosecuted this appeal.

It will at once be seen that the questions involved are each exclusively law ones, and which are: (1) Whether the exempting clause of the city's liability for excess costs of the improvement above 50 per cent. assessment of the value of an abutting lot (and which is in direct contravention of the provision of the statute supra) is or not valid, and, if so, is plaintiff denied the right to urge its invalidity under the maxim, "in pari delicto potior est conditio defenditis" and which is generally abbreviated and referred to as the "in pari delicto" doctrine? and (2), even though a negative answer should be given to question 1, is plaintiff then estopped to rely on the invalid provision in the contract? Those questions will be considered and determined in the order named. Question 1 may be subdivided into (a), whether or not the exempting clause in favor of the city contained in the accepting ordinance, and also in the contract, is or not against public policy; and, if so, then (b) whether plaintiffs under the doctrine of the maxim supra are prevented from urging such invalidity in avoidance of the defense based on that clause and which two subdivisions will likewise be discussed and disposed of in the order named.

■ The term "public policy," the contravention of which is forbidden in contracts, embraces many acts which are contrary to the promulgated law of the country either statutory or judicial, and which are intended for the protection of society, the morals of its members, and for the conservation of the highest standard of civilization. Being so general in its application, it is susceptible to no precise and exact definition. Therefore it may be presented under varying facts and cir-

cumstances with which we are not concerned. They are embraced in the general and all-inclusive definition to the effect that "in the law of contracts, the first purpose of the courts is to look to the welfare of the public; and if the enforcement of the agreement would be inimical to its interests, no relief can be granted to the party injured. * * * The common law will not permit individuals to oblige themselves by a contract either to do or not to do anything when the thing to be done or omitted is in any degree clearly injurious to the public." Greenhood on Public Policy, pp. 2, 3. Every text-writer available to us adopts the same general and all-inclusive definition in discussing the invalidity of contracts because violative of public policy. Likewise, every opinion of every court accessible to us is in accord with the text-writers on that subject. Some of the latest cases from this court so holding are City of Princeton v. Princeton Electric Light & Power Company, 166 Ky. 730, 179 S. W. 1074; Westerfield-Bonte Company v. Burnett, 176 Ky. 188, 195 S. W. 477; Kentucky Association of Highway Contractors v. Williams, 213 Ky. 167, 280 S. W. 937, 939, 45 A. L. R. 544, and other cases and text authorities cited in those opinions.

In the Williams opinion we had under consideration the validity of an agreement, embodied in a by-law of the Kentucky Association of Highway Contractors, to exact a percentage of the contract price of any public work done by any of its members as dues to the association, and we held the contract void because against public policy, in that it had "a direct tendency to injuriously affect the public welfare." The text in 9 Cyc. 481, was inserted in that opinion in support of that conclusion, and in which it is said: "Its (the contract) validity is determined by its general tendency at the time it is made, and, if this is opposed to the interests of the public, it will be invalid, even though the intention of the parties was good and no injury to the public would result in the particular case. The test is the evil tendency of the contract and not its actual injury to the public in a particular instance." We supported that holding by also citing Greenhood on Public Policy, p. 179, and Williston on Contracts, vol. 3, secs. 1728a, 1760, and 1761, also 13 C. J. 424, 425. We furthermore referred therein to a number of prior cases in this court of the same tenor, and from all of which it will be seen that, if a contract, howsoever innocently entered into, has a direct tendency to, and would if up-

held and enforced, injuriously affect a material and substantial part of the public, it will be declared to be one against public policy and most generally nonenforceable. That being true, the next inquiry is: Whether the exemption clause in the ordinance in this case accepting plaintiff's bid for the construction of the work, and the same as incorporated in the contract, possesses such inherent vice as to bring it within the condemnation of the law?

That the exemption clause in the ordinance and in the contract has and possesses such forbidden tendency, such as was denounced in the Williams opinion, is to our minds clearly apparent. As was said, in substance, in that opinion, the agreement therein denounced furnished an opportunity for the contractor to increase the amount of his bid to the extent of the demanded dues from him as a member of the Contractors' Association, and which was sought to be recovered in that case, and that self-preservation and self-interest would induce him to pursue that remunerative course and which would result in detriment to the public by causing the bids for the construction of public highways to be increased to that extent. Our observation leads us to conclude that contractors for the construction of public works, including roads and streets, possess sufficient alertness to protect their own interests, and a knowledge of human nature likewise teaches that such protecting steps will be taken in all cases where it is necessary to resort to them.

The section of our Statutes, supra (3096), expressly prescribes that no abutting owner may be assessed for a public improvement in front of his property in a greater amount than 50 per cent. of its value as enhanced by the improvement, and that where the cost of the improvement exceeds his assessment, then the city shall pay out of its public treasury such excess. In view of those provisions, it is correctly conceded in this case that, if the city, in providing for the improvement, and in advertising for bids therefor, had expressly stipulated for the exemption now relied on, it would have been invalid, and with which we agree. But it is contended that, when the same result is attempted to be accomplished by agreement between the city and the bidder after the bid had been formulated, submitted, and agreed to without such exemption, it then becomes valid, and is enforceable.

We find ourselves unable to agree with that contention, nor with the reasoning by which the conclusion is reached, since the vicious tendency that would invalidate the proceedings in the first instance is carried into the contract and with like effect. The underlying reason why that is so is that, if it should be upheld, then future contractors with the same alertness and possessing the same human nature to which we have referred, in formulating and submitting their bids, will take into their estimate the percentage of probable losses growing out of deficits of abutting property above the statutory limit of 50 per cent. valuation, and which would necessarily be placed upon the property of other abutting property owners whose assessments did not reach the 50 per cent. limitation, and their property would thereby become burdened to that extent, and all of which would be the natural result of the contract and the ordinance accepting the bid. When it is remembered that there are hundreds of incorporated towns in this commonwealth, in the charters of the most of which are similar provisions, and all the streets and public ways of which may be improved according to the plan under consideration, some idea may be obtained of the evil effects of such a contract and of the vicious consequences that would be entailed by its enforcement, either directly or indirectly as is attempted here. We regard this contract as analogous in every respect to the claim sought to be enforced in the Williams opinion, and, for the reasons therein stated, it must be held as an invasion of a sound public policy, and therefore invalid and nonenforceable. Compare the cases of City of Louisville v. Bitzer, 115 Ky. 359, 73 S. W. 1115, 61 L. R. A. 434, and L. W. Hancock Company v. City of Mt. Sterling, 170 Ky. 207, 185 S. W. 856. In the first one of those cases the evil tendency of the agreement, which was very much similar to the one here involved, of the character indicated, is expressly pointed out. We therefore conclude that subdivision (a) of question 1 should be answered in the affirmative.

We are next to consider and determine subdivision (b) of question 1 as affecting the right of plaintiff who is a party to the contract to rely upon the invalidity of the exempting clause referred to because of the "in pari delicto" doctrine, supra, and which, as generally stated, is that, when both parties are guilty, the court will leave them where it finds them. While that doctrine is of general application it is not without appar-

ent exceptions, and it has at least one actual exception. One of the apparent exceptions is that, where the contract is severable and the invalid part may be eliminated from the contract without destroying its other valid obligations, then a party to it does not stand in such pari delicto relations as will prevent him from attacking the invalid clause, although he signed the contract that contained it. Another one is that, where the parties to the contract sustain such relations to each other as gives one of them a predominance over the other, or where, because of that fact fraud is practiced upon one of them to such an extent that they are not equally guilty of the vice rendering the contract illegal, in such cases, and under some extreme circumstances, the one so imposed on is regarded as not strictly in pari delicto with the other contractor so as to deprive him of the right to insist on the invalidity of the contract, and in which case his rights thereunder are enforced. There is also found in the books support for the contention that, where a contract contains an independent clause inserted therein for the exclusive benefit of one of the parties and to the detriment of the other, then the latter in an action to enforce the contract may, in avoidance of a defense based on such invalid clause, insist on its invalidity and for the enforcement of the contract with such clause eliminated. In such case the one making the attack is not seeking to enforce the invalid provision, but only to prevent his adversary from doing so, thereby moving defensively, not offensively. There may be other conditions forming apparent exceptions to the application of the maxim, but we deem it unnecessary to enter into a discussion of any of them, although the first and last ones mentioned might possibly be applicable to the facts of this case, since we have concluded that the actual exception above referred to is sufficient to relieve plaintiff in this case from the consequences of the "in pari delicto" doctrine. That exception is: That "Even though the parties may be said to be in pari delicto it has been held that the courts may grant relief to one of them when public policy requires such intervention. In such case the guilt of the respective parties is not considered by the court, which looks only to the public interests, the guilty party to whom relief is granted being only the instrument by which the public is served." 15 American and English Encyclopedia of Law (2d Ed.) p. 1007.

To the same effect is Pomeroy's Equity Jurisprudence (4th Ed.) vol. 2, sec. 941, and which was approved by the court in the case of Re Estate of Sylvester, 195 Iowa, 1329, 192 N. W. 442, 30 A. L. R. 180. The contract in that case was one between attorney and client, in which the former undertook to prosecute a divorce action involving the settlement of the property rights of his client, the wife, upon a contingent percentage of the value of the property recovered, and which would necessarily have to be preceded by a judgment of divorce. The fee was paid by the wife in accordance with the agreement, and after her death her personal representative sued the attorney for the amount so paid and recovery was permitted, although the wife was in pari delicto to the invalid contract.

This court in the case of Modern Woodmen of America v. Hurford, 193 Ky. 50, 235 S. W. 24, 21 A. L. R. 1340, had before it the question of the invalidity of certain provisions of a life insurance policy because they were contrary to public policy. One of the provisions created a short period of limitation within which an action might be brought on the policy; but, following prior opinions of this court, it was held that such agreements were against public policy and that the plaintiff, although a party to the policy contract in which the provision was contained, could nevertheless attack it as invalid and enforce the contract at any time within the period provided by statute in such cases. Likewise, an agreement to pay usury is not obligatory on the promisor, and he may disregard it and be bound only for legal interest, even to the extent of recovering usurious interest already paid. The same principle is applied to contracts in restraint of trade and a number of other classes that might be mentioned. The theory upon which the exclusion of such contract from the consequences of the in pari delicto doctrine is bottomed is that, although as a general rule such contracts will not be enforced in favor of either party, yet in cases where the public interests would be more greatly subserved by excluding the contract from the operation of the rule of nonenforcement, and to a much greater extent than to deny such enforcement, the court will adopt the course guaranteeing the greater public service and give relief to the one insisting on the invalidity.

The text in 6 R. C. L. 929, sec. 220, also supports

the exception now under consideration, as does also that in 13 C. J. 497, sec. 441, wherein it is said: "Although the parties are in pari delicto, yet the court may interfere and grant relief at the suit of one of them, where public policy requires its intervention, even though the result may be that a benefit will be derived by a plaintiff who is in equal guilt with defendant. But here the guilt of the parties is not considered as equal to the higher right of the public, and the guilty party to whom the relief is granted is simply the instrument by which the public is served." The principle under consideration was, under more extreme but analogous facts, applied by this court in the cases of Oldham's Trustee v. Hume, 4 Ky. Law Rep. 355, 11 Ky. Op. 779, and Eversole v. Holliday, 131 Ky. 202, 114 S. W. 1195.

This opinion could be extended by reference to other cases and text-writers wherein the rule against enforcement by one party to an invalid contract was not followed because to do so would indirectly enforce an agreement of far-reaching detrimental effect to the public. But we deem it unnecessary and will not increase the cost of publishing the opinion (so much per page) by doing so. Suffice it to say that, if we should deny the right of plaintiff in this case to contest the invalidity of the exemption clause referred to because of his relationship to the contract containing it, then the door would be opened whereby similar contracts might be entered into and indirectly enforced to the great detriment and injury of the great number of abutting property owners on the streets of the various cities of this commonwealth, and from which we conclude that the public policy of the state is best served by upholding the right of appellants to attack the invalid clause supra, rather than to disallow their right to do so under the maxim supra, and to be followed by the consequences outlined.

■ Question 2 may be quickly disposed of. In the volume, supra, of American and English Encyclopedia of Law, p. 1015, the text states the general doctrine to be that validity cannot be given to "illegal contracts through the principles of estoppel," since "a party must first be in a position to assert a right before he can maintain it by estoppel." This court has approved that rule in a number of cases, some of which are, Milliken v. Haner, 184 Ky. 694, 212 S. W. 605; Looney v.

Elkhorn Land & Improvement Company, 195 Ky. 198, 242 S. W. 27; City of Winchester v. Azbill, 225 Ky. 389, 9 S. W. (2d) 51; and Mack v. City of Mayfield, 239 Ky. 420, 39 S. W. (2d) 679. That principle of the law relating to the effect of an estoppel is of universal application, subject, however, to be modified by certain exceptional facts which do not exist in this case. To allow the estoppel to prevail in this case would be tantamount to approving an agreement between the parties that the contract should be held valid and enforced, notwithstanding its clearly vicious tendency that we have already pointed out. Courts, except in exceptional cases, do not indorse or approve of inconsistencies by sustaining an estoppel whereby an invalid and nonenforceable contract is rendered enforceable. Defendant's pleaded estoppel, therefore, cannot be sustained.

Wherefore, for the reasons stated, the judgment overruling plaintiff's demurrer to paragraphs 4 and 5 of defendant's answer, and in dismissing the petition because of the facts therein averred, is reversed, with directions to set them aside and to sustain the demurrers filed thereto, and for other proceedings consistent with this opinion.

Whole court sitting, except Judge Willis.