## Stambaugh et al. v. Belcher's Adm'r et al.

Nov. 8, 1944.

Fred Howes for appellants.

E. H. King and Wheeler & Wheeler for appellees.

OPINION OF THE COURT BY JUDGE REES—Affirming.

Julia Belcher died intestate September 6, 1941, leaving as her only heirs at law two sisters, Vina Daniel,

and Louise Dercale, and five nephews and nieces, Virgil Stambaugh, John Stambaugh, Julia Stambaugh, Mary Ellen Stambaugh, and Jemima Stambaugh Castle, children of a deceased sister, Viola Belcher Stambaugh. Julia Belcher was 69 years of age at the time of her death and was never married. On September 24, 1941, Louise Dercale, a resident of California, conveyed to John Belcher her one-third interest in her sister's estate. John Belcher had been reared from infancy by Julia Belcher, but the record fails to disclose whether he was related to her. After her death he paid the funeral expenses amounting to $220.20. Colfax Butler qualified as administrator of Julia, Belcher's estate, and on January 30, 1942, brought an action in the Johnson circuit court to settle the decedent's estate, naming as defendants her heirs and their spouses and John Belcher. It was alleged in the petition that the decedent owned no personal property at the time of her death, but was the owner and in possession of a tract of land containing 25 acres worth approximately $1,000; that at the time of her death she was indebted to the First National Bank of Paintsville in the sum of $75, and that this indebtedness was secured by a mortgage on her land; that on October 1, 1941, the defendant Virgil Stambaugh paid $25 of this indebtedness and on October 11, 1941, the defendant Vina Daniel paid the remaining $50, and the estate was indebted to them in those amounts. It was also alleged that the estate was indebted to the defendant John Belcher in the sum of $220.20 for the burial and funeral expenses of the decedent. The plaintiff prayed that the action be referred to the master commissioner to ascertain the amount of indebtedness against the estate; that the indebtedness and cost of administration be paid out of the proceeds; and that the remainder be divided one-third to Vina Daniel, one-third to John Belcher, who had become the owner of Louise Dercale's interest, and one-third to the heirs of Viola Belcher Stambaugh.

Virgil Stambaugh and John Stambaugh filed an answer, counterclaim and cross-petition in which they alleged that their aunt, Julia Belcher, some time during the year 1939, executed and delivered to them a general warranty deed to the land described in the petition; that they took possession thereof and had legal title to and were then in actual possession of the land. They further alleged that without fault on their part the deed

executed and delivered to them by the decedent was destroyed before it was lodged for record in the county clerk's office. They asked that the plaintiff's petition be dismissed; that they be adjudged the owners of the land and their title thereto quieted; and that their co-defendants be required to convey and quit claim to them all right, title, and interest of Julia Belcher, deceased, therein. Vina Daniel, John Belcher, and the administrator filed an answer to the cross-petition in which they alleged affirmatively that the deed referred to in the cross-petition was procured by fraud and deceit and was without consideration, and was never delivered to or placed in the possession of the cross-petitioners, Virgil Stambaugh or John Stambaugh, and that their father, R. H. Stambaugh, in the presence of Julia Belcher and with her consent, destroyed it before it had been delivered. In an amended answer to the cross-petition the defendants Vina Daniel and John Belcher alleged that the deed to Virgil and John Stambaugh was made for the purpose of evading the Old Age Assistance Law, and was kept in the house of the decedent, Julia Belcher, and in her possession and was never recorded.

A large amount of proof was taken and on submission of the case the court ordered the land sold for the funeral expenses of $220.20 and the mortgage indebtedness of $75 paid by the appellee Vina Daniel and the appellant Virgil Stambaugh. The judgment contained this:

"It is further adjudged by the court that the deed mentioned in the evidence herein as having been made to the cross-petioners, Virgil Stambaugh and John Stambaugh, by Julia Belcher, now deceased, was made with the fraudulent intent to defeat the lien as required by Kentucky Old Age Assistance law and that said deed was dated back so that the period of limitation would bar said lien. Said deed was made and prepared for the grantor and the making of said deed was acquiesced in by grantees with the full knowledge of its fraudulent intent and purpose; and that purpose was to defraud the state. The court further finds and adjudges that the decedent, Julia Belcher, did not, at the time the deed was executed, intend to completely divest herself of title to her property and be at the mercy of and dependent upon her relatives in her old

age with no means of support and nothing left to pay for sickness and funeral expenses.''

Virgil Stambaugh and John Stambaugh have appealed.

In the autumn of 1940 Julia Belcher applied for and was granted assistance under the Old Age Assistance Act, Chapter 94, Acts 1936. The Act became effective July 1, 1936, and Section One provided that old age assistance should be given to any person who had attained the age of 65 years, had an income inadequate to provide a reasonable subsistence, met prescribed citizenship and residence requirements, and had not made a voluntary assignment or transfer of property for the purpose of qualifying for assistance. Section 11 of the Act read in part:

''The total amount paid to any recipient of old age assistance under this Act shall constitute a lien upon the estate of such recipient. On the death of a person receiving assistance under this Act, or of the survivor of a married couple, both of whom were assisted, the total amount paid as assistance, with interest, shall be allowed and deducted from the estate by the court having jurisdiction to settle the estate, and paid to the State.''

This section was repealed in 1940, Acts 1940, Chapter 156.

The proof shows that Julia Belcher was an illiterate but industrious woman and, besides working in her home and on her farm, worked nearly every day for one of her neighbors. Mrs. Fred C. Van Hoose testified that she worked for her at least 100 days each year, and that she paid her $1 a day. At other times she worked for other neighbors. She inherited the house and land where she lived from her father, Alex Belcher, who died about 25 years prior to her death. Viola Stambaugh, sister of Julia Belcher, her husband and their children moved into Julia Belcher's home immediately after Alex Belcher's death. Viola Stambaugh died a few years later, but her husband and children continued to live with Julia until her death. According to most of the neighbors Julia supported, clothed, and fed the Stambaugh family during all these years. As soon as the Old Age Assistance Act became effective R. H. Stambaugh applied for and was granted assist-

ance. After Julia reached the age of 65 he discussed with Fred C. Van Hoose, the Old Age Assistance Field Agent, the question of assistance for her. According to Van Hoose her application was not filed with him on account of the lien provision then in the law, but later R. H. Stambaugh came to him and said Julia was ready to apply for assistance as she had deeded her land away. Van Hoose asked him how long it had been since the deed had been executed and Stambaugh told him a year or two, and Van Hoose said "that wasn't far enough back to avoid the lien provision of the law." After the lien provision was repealed in 1940, Stambaugh renewed the discussion with Van Hoose who told him that it would be necessary to destroy the deed in order to get the old age assistance. Van Hoose, in his deposition, said:

"I asked if the deed was recorded and they said no, and I said if they would destroy the deed we would take her application. As soon as they agreed to destroy this deed and told me that it wasn't recorded I went around to their home and told Julia that if that had never been recorded and if they were ready and willing to destroy that deed I was ready to take her application. So they brought the deed out and it was destroyed and in the presence of her family and I took her application for the Old Age Pension."

Van Hoose was of the opinion that the destruction of an unrecorded deed by agreement of the parties, though the deed had been properly executed and delivered, restores the title to the grantor. There was testimony to the effect that Julia Belcher stated at or about the time the deed was destroyed that it had been executed to enable her to obtain old age assistance; that it had never been delivered; and that she did not intend to divest herself of title to the land. All of the evidence was taken by means of depositions and much of it was incompetent, but no exceptions were taken in the manner prescribed by sections 586 and 587 of the Civil Code of Practice, and the incompetency was waived. Parris' Adm'r v. John W. Manning & Sons, 284 Ky. 225, 144 S. W. 2d 490; Potter v. Mullins, 267 Ky. 822, 103 S. W. 2d 274; Ratcliff's Guardian v. Ratcliff, 242 Ky 419, 46 S. W. 2d 504; Hall v. Hall, 241 Ky. 317, 43 S. W. 2d 1001; Anglo-American Mill Co. v. Phillips, 236 Ky. 245, 32 S. W. 2d 994; Harrel's Adm'r

v. Harrel, 232 Ky. 469, 23 S. W. 2d 922. One cannot read the record without reaching the conclusion that the deed was executed at the instigation of R. H. Stambaugh, father of appellants, for the purpose of evading the lien provisions of the 1936 Old Age Assistance Act, and that there was never an intention by any of the parties to the deed that it should be delivered and recorded and should pass title to the appellants. Having reached this conclusion, it is unnecessary to discuss the legal effect of the transaction if the deed was made for the purpose of evading the statutory lien created in favor of the Commonwealth against property belonging to applicants for old age assistance further than to say that the rule announced in Forbes v. City of Ashland, 246 Ky. 669, 55 S. W. 2d 917, 919, would apply. In the opinion in that case it was said:

"If a contract, howsoever innocently entered into, has a direct tendency to, and would if upheld and enforced, injuriously affect a material and substantial part of the public, it will be declared to be one against public policy and most generally nonenforceable."

The purpose of those who induced Julia Belcher to execute the deed was to defraud the Commonwealth. The transaction was detrimental to the public interests, and public policy demands that such agreements should be discouraged and should not be permitted to stand. "If it is necessary, in order to discountenance such transactions, to enforce such an agreement at law or to relieve against it in equity, it will be done, though both the parties are in pari delicto." 12 Am. Jur., Contracts, sec. 214. We do not mean to say that the parties to this transaction were equally culpable. It is clear from the record that the decedent relied upon the representations of persons in whom she had confidence, and that no moral turpitude on her part was involved.

The judgment is affirmed.