## General Accident, Fire & Life Assurance Corporation, Ltd. v. Louisville Home Telephone Company.

(Decided April 17, 1917.)

Appeal from Jefferson Circuit Court
(Common Pleas Branch, Second Division).

1. Insurance—Employers' Liability Insurance—Insured May Settle Claim in Excess of Liability of Insurer.—Under a policy issued by an employers' liability company, its liability was limited to five thousand dollars, and the insured had the right to settle with the injured party for the excess of his liability over five thousand dollars without the consent of the company, although there was a clause in the policy that attempted to prevent the insured from settling any part of the liability without the written consent of the company.

2. Insurance—Employers' Liability Insurance—Contract Prohibiting Insured from Settling Excess over Liability of Insurer.—A liability insurance company cannot bind the insured in any form of contract not to settle at his own cost that part of any claim in excess of the contract liability of the insurance company.

3. Insurance—Employers' Liability Insurance—Validity of Contract.— A liability insurance company may stipulate in the contract that the insured shall not, without its consent, settle that part of any claim for which it is liable under its contract, and that if he does it will avoid the policy. But the insured has the right to settle at his own cost any part of the claim in excess of the contract liability of the insurance company.

4. Insurance—Employers' Liability Insurance—Validity of Contract Prohibiting Insured From Settling Claim.—Although an insurance company may restrain the insured from settling any part of the claim for which it is liable, a clause in the contract going beyond this and attempting to bind the insured not to settle the excess is not binding on the insured, nor will a violation of it have the effect of depriving him of the indemnity afforded by the contract.

5. Insurance—Employers' Liability Insurance—Validity of Clause Giving Insurer the Right to Control Settlement.—The insured cannot, in violation of the contract, interfere in any negotiations for settlement pending between the insurer and the claimant, or with the right of the insurer to defend in its own way any suit that

may be brought on a claim, but a settlement or compromise by the insured of the sum for which he would be liable in excess of the indemnity should not be treated as interfering with the right of the insurer to control the matter in so far as its interests are affected.

6. Insurance—Construction of Policy Contract.—If there is doubt as to the construction that should be given a contract of insurance, that construction should be adopted which is most favorable to the insured.

7. Insurance—Construction of Policy Contract.—Rules of grammar or punctuation will not be allowed to hinder such construction of the contract as will carry out the intention of the contract when considered as a whole. Contracts should be given a practical and common-sense construction, not a strained or technical one.

8. Contracts—Valid and Invalid Clauses or Conditions—Good May be Upheld and Bad Condemned.—Where a contract contains valid and invalid clauses or conditions, and the good may be separated from the bad without affecting the integrity of the contract as a whole, the unlawful part of the contract may be eliminated and the balance of it upheld.

GEORGE WEISSINGER SMITH for appellant.

HELM BRUCE, FRANK MURRAY DIXON and BRUCE & BULLITT for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

The appellant, a liability insurance company, issued an accident policy to the appellee telephone company, agreeing to indemnify it to the extent of not more than five thousand dollars against loss by reason of any liability incurred by the telephone company on account of personal injuries to one person caused by its negligence. It also reserved the right to defend any suit brought against the telephone company to recover damages on account of claims covered by its policy.

While this policy was in force one John M. Beall, brought a suit against the telephone company to recover damages for injuries alleged to have been sustained by its negligence, and the insurance company took charge of the defense for the telephone company, as it had the right under the contract to do. A trial resulted in a verdict and judgment for twelve thousand dollars, but on a motion for a new trial this verdict and judgment were set aside and a new trial ordered.

On a second trial Beall was given a verdict for $7,250.00, upon which judgment was entered. A motion

for a new trial was made and overruled, and thereupon the telephone company prosecuted an appeal to this court, and Beall also prosecuted a cross-appeal, insisting that the original judgment for twelve thousand dollars should be reinstated.

After the second judgment had been superseded and pending the appeal in this court from the judgment, but before the case was decided in this court, the telephone company paid Beall $2,250.00, with interest from the date of the judgment, this being the amount of the judgment in excess of the sum of five thousand dollars with interest for which the insurance company was liable under its contract with the telephone company. In consideration of this payment Beall agreed with the telephone company that he would not thereafter attempt to collect from it any sum in excess of five thousand dollars with interest and statutory damages thereon.

At the time this settlement by the telephone company was made with Beall, the liability of the telephone company to Beall on account of the verdict and judgment on the second trial was $7,250.00, with interest from the date of the judgment, together with ten per cent. damages if the judgment should be affirmed. Aside from this, if the judgment on the first verdict for twelve thousand dollars, which was set aside by the trial court, should be reinstated by the Court of Appeals in place of the judgment on the second trial, the liability of the telephone company would be for twelve thousand dollars, with interest from the date of the first judgment. It will thus be seen that if the judgment on the second trial was affirmed in the Court of Appeals, the telephone company would be required to pay in excess of the amount for which it had indemnity in the insurance company $2,250.00, with interest and damages, and if the first judgment was reinstated, its liability in excess of the indemnity would be seven thousand dollars, with interest from the date of that judgment.

It might here be noticed that the record did not disclose the settlement made between the telephone company and Beall, nor did the insurance company have any information concerning it until after the judgment for $7,250.00 had been affirmed by the Court of Appeals.

After the settlement was made, the case proceeded to a final conclusion exactly as if there had been no settlement, and when the judgment of the Court of Appeals affirming the $7,250.00 judgment became final, the tele-

phone company, in satisfaction of this judgment, was required to and did pay to Beall five thousand dollars, with interest, damages and costs, amounting in the aggregate to $6,014.70, for which sum it remained liable to him after having paid the $2,250.00; and thereafter it brought this suit against the insurance company to recover this sum, for which it was liable under its policy, if liable at all.

In its answer to this suit the insurance company denied all liability under its policy contract on account of the fact that without its knowledge or consent the telephone company settled with Beall a part of his judgment under the circumstances heretofore stated, resting its defense upon clause "G" in the policy contract, reading as follows: "Except as herein elsewhere provided for, the assured shall not voluntarily assume any liability, settle any claim, or incur any expense except at its own cost, or interfere in any negotiation for settlement or legal proceedings without the consent of the corporation previously given in writing."

In an amended answer, which was offered and made a part of the record, but not permitted to be filed, the insurance company further set up the defense "that at the time said telephone company made said payment in and settlement with said Beall, said Beall was in need of money and manifested to said telephone company a willingness to compromise his said claim and suit against said telephone company for said damages, and said telephone company concealed said facts from this defendant and deprived this defendant of a favorable opportunity to settle said claim and said suit and reduced its opportunity to make an advantageous settlement for an amount less than its possible liability under the terms of said policy issued to said telephone company."

The trial court being of the opinion that the original answer, which relied on the condition in the policy contract heretofore set out, did not constitute any defense, sustained a general demurrer to the answer, and further being of the opinion that the amended answer did not state any grounds of defense, refused, as we have stated, to permit it to be filed. With the record in this condition, the insurance company declining to plead further, judgment went against it for the full amount sought to be recovered by the telephone company, and the case has been brought here.

It will thus be seen that there is no issue of fact in the case. It turns entirely on questions of law arising on the answer and amended answer of the insurance company.

The right of the insurance company to take charge of and control the litigation between Beall and the telephone company is conceded by counsel for the telephone company, and it is further conceded that if the telephone company, without the written consent of the insurance company, voluntarily assumed any liability to settle or settled that part of the judgment for which the insurance company was liable under its contract, it would avoid the policy and work a release of the insurance company from all liability, but insisted that the telephone company had the right, without relieving the insurance company from liability, to settle with Beall so much of his judgment as it was not indemnified against by the insurance company. And as the settlement made with Beall went to this extent only, the question for our decision is, could the telephone company, without relieving the insurance company from all liability, settle without its consent in writing any part of the judgment obtained by Beall against it?

For the telephone company the argument is made that clause "G" did not, according to its terms, prevent it from settling at its own cost that part of any liability or claim that it was not indemnified against; while counsel for the insurance company insist that under a proper interpretation of this clause the insured could not, without its consent in writing, settle any claim, or assume any liability whatever on account of a claim any part of which the insurance company was bound under its contract to pay.

Under this latter construction of the contract, if the liability of the insured arising on a judgment that had not become final should reach, for example, the sum of ten thousand dollars, and he could settle the excess over five thousand dollars by the payment of one thousand dollars, he would be prohibited from so doing unless the insurance company consented thereto in writing. The same conclusion would of course be reached if the insured undertook to settle any part of a meritorious claim for damages presented against him, although by so settling the insured might reasonably believe he could save himself a considerable sum of money.

Counsel for the insurance company contend that the words in clause "G" "except at its own cost," qualify only the words "incur any expense," and do not relate to or qualify the words "assume any liability or settle any claim"; in other words, that the insured may under this clause, without affecting the liability of the insurance company, incur any expense at its own cost that it sees proper to incur in preparing a defense to a claim or in resisting a suit brought on it, but it cannot at its own cost settle any part of such claim or assume any liability for any part thereof.

In Lewis' Sutherland on Statutory Construction, 2nd Ed., sec. 420, it is said: "Relative and qualifying words and phrases, grammatically and legally, where no contrary intention appears, refer solely to the last antecedent. . . . This principle is of no great force; it is only operative when there is nothing in the statute indicating that the relative word or qualifying provision is intended to have a different effect. And very slight indication of legislative purpose or a parity of reason, or the natural and common-sense reading of the statute, may overturn it and give it a more comprehensive application."

In the construction of all contracts the endeavor of the courts is to give the contract under investigation such a construction as will comport with the reasonable intent of the parties in making the contract, although this construction may not conform to strict rules of grammar or punctuation. In other words, the court will not let a rule of grammar or a rule of punctuation interfere with or hinder such construction of the contract as will carry out the intention of the parties when that intention can be arrived at from a consideration of the contract, or defeat the purpose of the contract by a narrow or illiberal construction of it. Contracts should be given a practical and common-sense construction, not a strained or technical one, and such a construction as fair-minded men of ordinary intelligence would give them. Especially should insurance contracts be given a liberal, sensible, practical construction, upon the ground, as stated in the decisions and authorities, that insurance contracts are prepared by the companies and the insured has no voice in the selection of the words used or the construction of the sentences employed or the arrangement of the punctuation. He must take it as it is handed to him by the company that prepared it.

So that, as said in Noonan v. Bradley, 76 U. S. 394, 19 L. Ed. 757: ''If there were any doubt as to the construction which should be given to the agreement of the intestate, that construction should be adopted which would be more to the advantage of the defendant, upon the general ground that a party who takes an agreement prepared by another, and upon its faith incurs obligations or parts with his property, should have a construction given to the instrument favorable to him; and on the further ground that when an instrument is susceptible of two constructions—the one working injustice and the other consistent with the right of the case—that one should be favored which standeth with the right.''

In May on Insurance, section 175, this rule of construction is stated in these words: ''No rule in the interpretation of a policy is more fully established or more imperative and controlling than that which declares in all cases it must be liberally construed in favor of the insured, so as not to defeat, without a plain necessity, his claim to indemnity, which, in making the insurance, it was his object to secure. When the words are, without violence, susceptible of two interpretations, that which will sustain and cover the loss must, in preference, be adopted.''

In somewhat similar words this rule of construction was thus stated in Spring Garden Ins. Co. v. Imperial Tobacco Co., 132 Ky. 7, 20 L. R. A. (N. S.) 277, 136 Am. St. Rep. 164: ''In the construction of policies the same rules obtain as do in the construction of other contracts, with the exception that a policy will be construed in favor of the insured so as not to defeat, without plain necessity, his claim to the indemnity, which in taking the insurance it was his object to secure; and, when the words are fairly susceptible of two interpretations, that which will sustain his claim and cover the loss must by preference be adopted. It may also be said that ambiguities, and words, sentences, or clauses of doubtful meaning, will be construed against the insurer; and this for the reason so often declared that the companies themselves prepare the policies with great care and deliberation, and, as the insured has no election except to accept them as prepared and presented to him, it is fair that they should be construed most strongly against the insurer and most liberally in favor of the insured, so that the purpose for which the insurance was obtained may be effectuated, if this can be done without doing violence

to the contract.  It is also a familiar principle everywhere recognized in the construction of contracts, including contracts of insurance, that the intention of the parties is to be gathered from an inspection of the entire instrument; and that all parts of it, and all words employed, should be given meaning and effect if this can be done. May on Insurance, sec. 175; Joyce on Insurance, sec .271; American Accident Co. v. Reigart, 94 Ky. 547, 23 S. W., 191, 15 Ky. L. R. 469, 21 L. R. A. 651, 42 Am. St. Rep. 374; Chandler v. St. Paul Ins. Co., 21 Minn. 85, 18 Am. Rep. 385; Germania Fire Ins. Co. v. Roost, 55 Ohio St. 581, 45 N. E. 1097, 36 L. R. A. 236, 60 Am. St. Rep. 711; Mutual Benefit Life Ins. Co. v. Dunn, 106 Ky. 591, 51 S. W. 20, 21 Ky. L. R. 213; Imperial Fire Ins. Co. v. County of Coos, 151 U. S. 452, 14 Sup. Ct. 379, 38 L. Ed. 231; Mouler v. American Ins. Co., 111 U. S. 708, 4 Sup. Ct. 466, 28 L. Ed. 447; Aetna Ins. Co. v. Jackson, 16 B. Mon. 242.''

Adopting these rules of construction, we are of the opinion that the telephone company ''at its own cost,'' and without the written consent of the insurance company, had the right under clause ''G'' to assume any liability, settle any claim, or incur any expense that did not deprive the insurance company of its right to contest in its own way its liability for the sum it was obliged to pay under its contract.  The purpose of this clause, as we understand it, when read in connection with the clause in the policy giving to the insurance company the right to direct and control all litigation arising on the claim, was to prevent the insured from making any settlement, or assuming any liability, or incurring any expense for which the insurance company might be liable under its contract, unless he first obtained the consent in writing of the insurance company.  The insurance company was interested, of course, in protecting itself, and under its contract no liability could be put on it by the insured without its written consent.

But if we should be in error as to this being the proper construction of the contract, and if the intention on the part of the insurance company in writing this clause was to prohibit the insured from settling at his own cost that part of any claim in excess of the liability of the insurance company, we are well satisfied that such intention should not be given effect by the courts and that a breach of it would not avoid the indemnity guaranteed to the insured.

The validity of the clause in these contracts that prohibits the insured from settling without the consent of the insurer any part of the claim for which the insurer might be liable under its contract, appears everywhere to have been recognized by the courts, and although we have not found any particular discussion of this question in the cases, it would seem to necessarily follow from the approval of this character of insurance contracts that they are not regarded as opposed to a sound public policy. New Orleans & Carroll R. R. Co. v. Maryland Casualty Co., 114 La. 154, 6 L. R. A. (N. S.) 562; Rochester Mining Co. v. Maryland Casualty Co., 143 Mo. App. 555; Rumford Falls Paper Co. v. Fidelity & Casualty Co., 92 Me. 574; Interstate Casualty Co. v. Wallins Creek Coal Co., 164 Ky. 778; Fuller on Accident and Employers' Liability Insurance, p. 438; St. Louis Dressed Beef & Provision Co. v. Maryland Casualty Co., 201 U. S. 173, 50 L. Ed. 712; Connolly v. Bolster, 187 Mass. 266; New Amsterdam Casualty Co. v. Cumberland Tel. Co., 152 Fed. 961, 12 L. R. A. (N. S.) 478; Travelers Ins. Co. v. Henderson Cotton Mills, 120 Ky. 218.

But notwithstanding the general approval by the courts of so much of these contracts as obligates the insured not to settle any part of a claim affecting the liability of the insurance company without its consent, we are quite sure that if the question were an open one many substantial reasons might be presented why a contract that attempted to prohibit an employer or any other person from settling in his own way and according to his own sense of justice and right a claim against him arising on account of his negligence or wrong doing should be declared void as against public policy.

But assuming that the insurance company had the right to stipulate that the insured should not without its consent impose by settlement or otherwise any cost or liability on it, this is as far as it should have the right to go under any sort of contract in preventing the insured from exercising his own judgment and discretion in settling with an injured claimant. The right of an insurance company to interfere with an insured in settling in his own way and at his own cost that part of a claim in excess of the contract liability of the insurance company, we are not willing to concede, no matter in what words or form of expression the insurance company may attempt to restrain the insured from doing this.

It may here be remarked as a curious circumstance, in view of the great number of cases involving contracts like this that have come before the courts, that neither we nor the industrious counsel representing the respective parties in this case have been able to find any cases, except Pickett v. Fidelity & Casualty Co., 60 S. C. 477, and McAleenan v. Massachusetts Bonding Co., 159 N. Y. Supp. 401, in which this question appears to have been considered. In these cases these courts adopted the conclusion we have reached, although the value of the opinions is somewhat detracted from by the fact that the question only received brief notice and the opinions were handed down by divided courts.

It may be said that if the insurer has the lawful right to restrain the insured from making any settlement with an injured claimant that would affect the liability of the insurer, or, in other words, any settlement that was not in excess of its indemnity, and that such a settlement would release the insurer from all liability, it should also have the lawful right to prohibit the insured from settling any part of the claim, although the part so settled might be in excess of the indemnity; and so a settlement of the excess over the indemnity would avoid the policy to the same extent as would a settlement within the amount covered by the indemnity.

But we are not prepared to give our assent to the soundness of an argument like this. Although an insurance company may have the lawful right to restrain an insured from settling any part of the claim for which it is liable, and may insert such a clause in its contract, a stipulation going beyond this should not be binding on the insured or a violation of it have the effect of depriving him of the indemnity afforded by the contract. In other words, we think that any effort on the part of an insurance company to restrain the insured from settling so much of a claim as is in excess of the indemnity is so unjust and unreasonable that that part of the contract may be disregarded and the balance of it upheld.

It is a very well-established principle that where a contract contains valid and invalid clauses or conditions, and the good may be separated from the bad without affecting the integrity of the contract as a whole, the unlawful part of the contract may be eliminated and the balance of it upheld. A full discussion of this principle and the authorities in support of it may be found in New-

port Rolling Mill Co. v. Hall, 147 Ky. 598, and Stratton, Admr. v. Wilson, 170 Ky. 61.

In this connection it should not be overlooked that the amended answer tendered by the insurance company in this case discloses that the chief and vicious purpose of the provision intended to restrain the insured from settling in a fair way the excess over the amount of the indemnity was to enable the insurer to take advantage of the needs of the injured party and force him on account of his necessities to accept less than the sum to which he was justly entitled, as had been determined by the judgment in his favor. In other words, the contention of the insurance company as set out in this amended answer is that if the telephone company had not paid Beall $2,250.00, in part settlement of a claim to which two verdicts and judgments showed him to be entitled, his poverty and urgent need for money would have forced him to accept whatever sum the insurance company thought proper to offer in settlement of his whole judgment, although it might be much less than the sum for which it agreed to indemnify the telephone company and grossly inadequate to afford the claimant reasonable compensation for his injuries. As this is the only ground upon which an argument opposed to the right of an insured to settle a judgment against him in excess of the indemnity is put, it needs no argument to show that no court should give its sanction to that part of a contract the validity of which is rested on such untenable and obnoxious grounds. The insured cannot of course interfere in any negotiations for settlement pending between the insurer and the claimant, or with the right of the insurer to defend in its own way any suit that may be brought against the insured for the recovery of an amount for which the insurer would be liable in whole or in part. But if the insured for his own protection or in an effort to do what seems to him right, should make a settlement or compromise with the claimant for the sum for which he would be liable in excess of the indemnity, this should not be regarded as interfering with the right of the insurer to control the matter in so far as its interests were affected, because in no event could the insured recover from the insurer the amount paid by him without its consent.

We are entirely satisfied that the lower court correctly ruled that the telephone company had the right, without avoiding the policy, to make the settlement with Beall that it did make, and the judgment is affirmed.