Angel LEWIS, a minor, BY her next
friend Joseph J. LEWIS,
Appellant,

v.

WEST AMERICAN INSURANCE
COMPANY, Appellee.

No. 95–SC–751–DG.

Supreme Court of Kentucky.

Aug. 29, 1996.

Joseph M. Schulte, Covington, for Appellant.

Mark G. Arnzen, David A. Futscher, Arnzen, Parry & Wentz, PSC, Covington, for Appellee.

KING, Justice.

■ The issue before the Court is the validity of "family" or "household exclusion" clauses contained in liability insurance policies. Such exclusions limit the insurance coverage available for a person's injuries solely on the basis of the injured party's status as a member of the policyholder's family. We find that such an exclusion to insurance coverage is deleterious to our community interests and is repugnant to the public policy of our Commonwealth. Accordingly, we hold that family exclusions to liability insurance policies are invalid and unenforceable.

Angel Lewis, a nine-year old, was a passenger in an automobile owned and operated by her mother, Loretta Lewis. The vehicle was involved in a collision with a tractor-trailer, and Loretta Lewis was killed. Angel suffered serious and permanent injuries including brain damage.

The Lewis automobile was insured by West American Insurance Company. Although the policy provides liability coverage of $100,000 per person, $300,000 per accident, it contains an amendatory endorsement entitled "Amendment of Policy Provisions—Kentucky". The amendments include a family exclusion which specifically limits liability coverage available for "bodily injury" to the named insured or any family member of the named insured. The coverage is limited to the minimum liability insurance coverage statutorily required by the Kentucky Motor Vehicle Reparations Act. Thus, the insurance policy limits liability coverage to the $25,000 statutory minimum where the injured person is the named insured or a member of a named insured's family, regardless of who is driving the automobile.

The injuries Angel sustained required intensive medical care. Her medical expenses to date approach $50,000. She requested payment of the liability policy limits of $100,000, but West American denied the request claiming the family exclusion clause limited her recovery to only $25,000.

Angel Lewis filed an action for declaratory judgment challenging the validity of the family exclusion clause. The Campbell Circuit Court, relying on *Staser v. Fulton,* Ky.App., 684 S.W.2d 306 (1984), entered summary judgment upholding the exclusion. On review the Court of Appeals found merit in the argument that family exclusion clauses are outmoded but, feeling bound by stare decisis, affirmed the trial court.

## COLLUSION AS A BASIS FOR TORT IMMUNITY

The rationale behind family exclusions is to protect insurance companies from the possibility of family members colluding to obtain greater compensation for an injured family member than that person rightfully deserves. This same reason was the basis for the passage of "guest statutes" as well as the implementation of the doctrines of spousal immunity and parent-child immunity. In holding the family exclusion provision invalid, we draw upon the experiences learned from, and the public policy articulated in, our past decisions rejecting the possibility of collusion by a few as a valid reason to deny benefits to an entire innocent class. Just as the possibility of fraud and collusion by a few did not justify the continuation of other immunities, it likewise does not justify a family exclusion in a liability insurance policy.

### GUEST STATUTES

Beginning in the 1920's, state legislatures began enacting "guest" statutes. These stat-

utes typically provided that operators of automobiles were not liable for injuries to guest passengers unless the injuries were intentionally caused or, by the terms of some statutes, were caused by gross or willful negligence. Guest statutes "are generally acknowledged to have been the result of persistent and effective lobbying on the part of liability insurance companies." W. Page Keeton et al., *Prosser and Keeton on the Law of Torts,* Sec. 34, p. 215 (5th ed. 1984). The justifications proffered for these statutes were the protection of hospitality and the prevention of collusion between hosts and guests. *Id.*

Kentucky enacted a guest statute in 1930. 1930 Ky. Acts 85, Sec. 12–7. This statute was promptly ruled unconstitutional for violating sections 14, 54, and 241 of the Kentucky Constitution. *Ludwig v. Johnson,* 243 Ky. 533, 49 S.W.2d 347 (1932). The Court emphasized that "[i]t was the manifest purpose of the framers of [the Kentucky Constitution] to preserve and perpetuate the common-law right of a citizen injured by the negligent act of another to sue to recover damages for his injury." *Id.,* 49 S.W.2d at 351.

Over time, the guest statutes in most other states were either repealed by state legislatures or invalidated by state courts. Today only three states have "substantially limited" guest statutes, and only one state (Alabama) still retains a "full-fledged version." James Woods, *Guest Statutes; Goodbye and Good Riddance,* 16 Cumb.L.Rev. 263, 265–66 (1986).

When courts began to examine guest statutes, they determined that the reasons advanced for their existence did not justify the differential treatment of one class of passengers. "[I]t is unreasonable to eliminate causes of action of an entire class of persons simply because some undefined portion of the designated class may file fraudulent lawsuits." *Brown v. Merlo,* 8 Cal.3d 855, 106 Cal.Rptr. 388, 402, 506 P.2d 212, 226 (1973). Although guest statutes might prevent a few collusive suits, most courts determined that their greater negative effect was to penalize the vast majority of automobile passengers who were honestly seeking relief for legitimate injuries. In abrogating guest statutes, courts and legislatures decided to allow the fact-finder, the jury, to ferret out the fraudulent claims rather than arbitrarily punishing the innocent.

## INTERSPOUSAL IMMUNITY

Interspousal immunity, the legal doctrine which prevented one spouse from asserting a legal claim against the other, originally was based on the legal fiction of the unity of husband and wife coupled with a person's inability to sue him or herself. In the mid-nineteenth century, state legislatures began enacting Married Women's Property Acts. These Acts were aimed at giving married women a separate legal identity. Courts generally interpreted these statutes as only allowing one spouse to enforce property rights against the other. But a spouse was prohibited from suing another for a tort based upon the assumption that interspousal immunity promoted spousal harmony and prevented fraudulent claims. *Restatement (Second) of Torts,* sec. 895F, cmts. b-d (1977). However, as noted by the drafters of the Restatement, "These would seem to be poor justifications for denying all remedy for a serious and genuine wrong." *Id.,* Comment d.

In 1953, Kentucky's highest court completely abrogated interspousal immunity. *Brown v. Gosser,* Ky., 262 S.W.2d 480 (1953). The Court based its decision on the determination that the language of the Married Woman's Act of 1894 necessitated the abrogation. Previously the Court had interpreted the Act as not affecting the common law rule. The Court found that changing circumstances had eliminated the reasons on which the common law rule was based and that the abrogation of the immunity was more in keeping with modern thought. *Id.* at 483, 484.

The Court addressed the fear that relaxation of the immunity would open the door to fraudulent claims, especially against insurance companies:

We are not willing to admit that the courts are so ineffectual, nor our jury system so imperfect, that fraudulent claims cannot be detected and disposed of accordingly. There is an opportunity for fraud in many types of claims which reach the courts, but that does not justify denying the right to maintain those which have merit.

*Id.* at 484.

More than two-thirds of the states have similarly abrogated the doctrine of spousal immunity. *Beattie v. Beattie,* 630 A.2d 1096, 1100 (Del.1993); *Waite v. Waite,* 618 So.2d 1360, 1361 (Fla.1993). State after state has rejected the possibility of collusion as being a sufficient reason to deny an entire class of people the right to be compensated for legitimate injuries. "[T]he need to protect a victim of wrongdoing has come to outweigh the reasons for maintaining the immunity rule." Gerald Ashdown, *Intrafamily Immunity, Pure Compensation, and the Family Exclusion Clause,* 60 Iowa L.Rev. 239, 242 (1974).

## PARENTAL IMMUNITY

Parental immunity did not exist at common law. It began in 1891 when the Mississippi Supreme Court, without citation to authority, determined that a child could not sue her parents for false imprisonment in an insane asylum. After the Mississippi decision, all but seven states accepted the doctrine. The justifications for the immunity were the promotion of domestic peace and felicity and the prevention of fraud and collusion. However, courts later began to carve out exceptions to the immunity and some courts have completely abrogated it. *Restatement (Second) of Torts,* sec. 895G, cmts. b-j (1977); *Broadbent v. Broadbent,* 184 Ariz. 74, 76–77, 907 P.2d 43, 45–46 (1995).

Parental immunity from tort actions by a child has been abandoned in Kentucky, except where the negligent act at issue involves either the "reasonable exercise of parental authority" or "the exercise of ordinary parental discretion with respect to provisions for the care and necessities of the child." *Rigdon v. Rigdon,* Ky., 465 S.W.2d 921, 923 (1971). *See also, Horn v. Horn,* Ky., 630 S.W.2d 70 (1982). The court determined "[i]n light of modern social and economic conditions, the reasons for the rule no longer outweigh the justifications favoring its abrogation." *Rigdon, supra* at 923.

## FAMILY EXCLUSIONS

Kentucky has witnessed the passage of a guest statute and the adoption of interspousal and parental immunity. Each were initially premised upon the belief that such action was necessary to prevent fraud and collusion. Over the past 60 years Kentucky's highest court has repeatedly held that such a reason does not justify the hardships these immunities impose on our citizenry.

With the erosion of the immunities provided by the doctrines of interspousal and parental immunity, insurance companies sought to protect their interests by inserting family exclusions into their insurance contracts. *State Farm Mut. Auto. Ins. Co. v. Wagamon,* 541 A.2d 557, 559 (Del.1988). However, for compelling policy reasons courts have invalidated family exclusion clauses. "[C]ourts have been forced to balance insurance company concerns about collusion against a legislative mandate that victims be compensated, and a judicial policy which disfavors intrafamily immunity." *Id.*

Under the West American policy at issue here, when an insured or member of the insured's family is a passenger in the insured's vehicle and is injured through the negligence of the driver, whether related or not, the victim can recover only the statutory minimum of $25,000, regardless of the policy limits. As a result, an insurance policy containing such a clause prevents a specific class of innocent victims from receiving adequate financial protection. This exclusion is entirely based upon the person's status as a member of the named insured's family. Without documentation or factual basis, every member of this excluded class is labeled high risk and branded as being more likely to engage in collusion and fraud.

This exclusion becomes particularly disturbing when viewed in light of the fact

that this class of victims is the one most frequently exposed to the potential negligence of the named insured. Typical family relations require family members to ride together on the way to work, church, school, social functions, or family outings. Consequently, there is no practical method by which the class of persons excluded from protection by this provision may conform their activities so as to avoid exposure to the risk of riding with someone who, as to them, is uninsured.

*Mutual of Enumclaw Ins. Co. v. Wiscomb,* 97 Wash.2d 203, 643 P.2d 441, 444 (1982).

To uphold the family exclusion would result in perpetuating socially destructive inequities. Three examples of ordinary activities illustrate these inequities.

First, every day in our Commonwealth parents participate in car pools and drive their children and their neighbor's children to school, social, and recreational events. However, if the parents' negligence results in an automobile collision equally and seriously injuring all passengers, only the neighbor's children can be fully compensated. The policy holders' children, despite the severity of their injuries are limited to the minimum mandated insurance coverage.

Second, when two married couples drive to dinner in the driver's car and all are injured by the driver's negligence, the driver's friends are protected by the full amount of insurance coverage but not the driver's spouse. If one of the friends operates the automobile, the friend's spouse is provided full insurance protection, but not the owner or owner's spouse.

Third, it is commonplace for two neighborhood families to drive to a common destination with the children from both families intermingled in both cars. Unfortunately, if the cars negligently collide, only those children who happen to be riding with their neighbor can be fully compensated.

These examples illustrate the undeniable fact that, because of family exclusions, insurance protection for Kentucky families is not uniformly available nor based upon logic or equity. Many of the people denied insurance coverage are innocent children who have no say about the vehicle in which they are placed, who drives the vehicle, or the manner in which the vehicle is driven. Furthermore, because of their tender years, in many cases they are incapable of fraud or collusion. Despite these considerations, family exclusion clauses deny them the full protection provided by insurance policies.

Because motor-vehicle policies are largely contracts of adhesion, there is no practical method by which the class of excluded persons may avoid such exposure to risk. Liability insurance coverage is "offered to the insurance consumer on essentially a 'take it or leave it' basis without affording the consumer a realistic opportunity to bargain" or negotiate. *Jones v. Bituminous Casualty Corp.,* Ky., 821 S.W.2d 798, 801 (1991). Therefore, the consumer is subject, often without warning, to any provision the insurer may wish to include in the policy. In the instance of the family exclusion clause, courts have rejected the reasons for the exclusion in a wide variety of instances.

## REASONABLE EXPECTATIONS

Consumers purchase liability insurance coverage in excess of the mandatory amounts required by law out of a sense of personal, financial and social responsibility. By purchasing higher liability insurance limits, the insured provides a method to compensate those injured as a result of the insured's negligence without endangering the financial security earned by years of hard work. Purchasers of automobile insurance expect their family members to receive comparable protection to that afforded to unknown third persons. Family exclusions defeat these goals and render liability insurance coverage illusory for those persons the insured most desires to protect, who are also the persons most likely to be passengers in the insured's vehicle, the insured's loved ones.

This court has strongly adhered to a policy of protecting the reasonable expectations of

policyholders. *Jones, supra; Continental Cas. Co. v. Freeman,* Ky., 481 S.W.2d 309, 313 (1972). In *Hamilton v. Allstate Ins. Co.,* Ky., 789 S.W.2d 751 (1990), and *Chaffin v. Kentucky Farm Bureau Ins. Co.,* Ky., 789 S.W.2d 754 (1990), we determined that insurance companies could not enforce even a clearly written anti-stacking provision in their uninsured motorist policies. We stated that "the coverage bought, paid for and reasonably expected is illusory. Such is contrary to the public policy of Kentucky." *Chaffin, supra,* at 757–58.

> It is always possible to exclude coverage to such an extent that only in the rarest of circumstances would a claim ever arise. Such, of course, defeats the underlying purpose of insurance.

*Id.* at 757. Just as the exclusions in *Hamilton* and *Chaffin* created illusive coverage, family exclusion provisions also result in illusive coverage.

Although "insurance carriers have the right to impose reasonable" limitations on their coverage, "the question then becomes the reasonableness of the condition as a limitation on public policy as opposed to one of strict contract considerations between private parties where no public interest is involved." *Jones, supra* at 802. As West American conceded at oral argument, no carrier is entitled to write an insurance policy with arbitrary exclusions, such as a provision excluding all red-haired people from coverage.

According to West American, the sole basis for the family exclusion is to allow insurance companies to continue to offer reasonably priced policies based upon their ability to exclude from coverage "high risk collusive claims." In *Chaffin,* the insurance company contended that the exclusion at issue was "one of the few means available to an insurance carrier to prevent collusive suits." *Chaffin, supra* at 756. Once again, we found that the collusion argument "had little merit." *Id.*

In *Chaffin,* we determined that it might be appropriate to draft narrow exclusions "in those instances when a legitimate probability of collusion exists." *Id.* at 757. However, the exclusion at issue there prohibited claims "in a multitude of circumstances in which collusion is not a reasonable possibility." *Id.* Similarly, the family exclusion is overbroad. In many cases between family members, the likelihood of collusion is remote or nonexistent. This case is illustrative. Here, Angel's mother, the driver of the vehicle, is dead. No family member remains with whom Angel could collude concerning the details of the collision.

The over inclusiveness of the family exclusion clause is socially destructive and corrosive to our citizenry's confidence in our system of justice. The family exclusion operates to bar all valid claims of injured family members in order to preclude the possibility of collusion. We cannot lock our Commonwealth's courthouse doors to the many who are injured and maimed because of a suspicion that a few members of this class might advance an exaggerated claim.

The fear of collusion is inadequate justification for the existence of the family exclusion. As in earlier cases, we are not persuaded that our system of justice is incapable of detecting and disposing of fraudulent claims. An insurance carrier has an array of techniques to test both the truthfulness and accuracy of the information provided by a claimant. Furthermore, our system of justice has sufficient institutional safeguards in place to ferret out one who seeks to perpetrate a fraud on our legal system. We find nothing so unique about claims brought by family members that would hinder the ability of our judicial system to address any possible abuse.

Without fraud or collusion as a basis for the family exclusion, there is no reason to exclude family members from the full benefits of a liability insurance policy.

## FAMILY EXCLUSIONS AND PUBLIC POLICY

In *Bishop v. Allstate Ins. Co.,* Ky., 623 S.W.2d 865 (1981), we took the first step

toward determining family exclusion clauses violate public policy. We found that a family exclusion provision which completely excluded liability coverage was invalid to the extent it diluted or eliminated the minimum tort liability coverage required by law. We came to this conclusion because the Motor Vehicle Reparations Act mandates payment of tort liability for personal injuries and property damage. Prior to the enactment of the MVRA, we upheld family exclusion provisions in insurance contracts. "However, when the legislature stated the policy behind the MVRA and set·forth its requirements it specified no exclusions from minimum coverage." *Bishop* at 866. We did not have before us, nor did we address, the validity of an exclusion affecting liability coverage in excess of the statutory minimum.

The Court of Appeals extended *Bishop* in *Staser v. Fulton,* Ky.App., 684 S.W.2d 306 (1984). In *Staser,* as in *Bishop,* the insurance policy completely excluded liability coverage to any insured or family member. Unlike *Bishop,* the policy limits in *Staser,* were in excess of the statutory minimum. The Court of Appeals determined that the MVRA does not preclude application of family exclusion provisions in automobile policies written in excess of the statutory minimums and voided the family exclusion only to the extent it eliminated the statutory minimum coverage.

We recognize that this Court, before the enactment of the MVRA, upheld the validity of the family exclusion clause contained in liability insurance contracts. *Third National Bank of Ashland v. State Farm Mutual Automobile Ins. Co.,* Ky., 334 S.W.2d 261 (1960). However, public policy is not static and fixed. It is dynamic, flexible and fully capable of adapting to new situations and findings in order to permit our institutions to better serve the needs of our citizens. "Public policy is a variable quantity. It varies with the habits, capacities, and opportunities of the public. It often changes as the laws change, and therefore new applications of old principles are required." *Chreste v. Louisville Ry. Co.,* 167 Ky. 75, 180 S.W. 49, 52 (1915).

The need for adaptation in the law was fully recognized by the founders of our Republic. Generations of Americans have read with pride the words enshrined in the Jefferson Memorial and taken from a letter Thomas Jefferson wrote to Samuel Kercheval on July 12, 1816. The inscription reads in part:

> I am not an advocate for frequent changes in laws and constitutions, but laws and institutions must go hand in hand with the progress of the human mind. As that becomes more developed, more enlightened, as new discoveries are made, new truths discovered and manners and opinions change, with the change of circumstances, institutions must advance also to keep pace with the times.

We have had fifteen years to function under the rule in *Bishop* which held that even family members of the insured were entitled to the minimum statutory coverage. We have not seen, nor been directed to, any evidence that there has been an increase in collusive claims by family members since *Bishop.* In view of this experience, it is unreasonable to surmise that family members will be collusive in the presentation of claims above the statutory minimum.

■ If a contract "has a direct tendency to, and would if upheld and enforced, injuriously affect a material and substantial part of the public, it will be declared to be one against public policy and most generally nonenforceable." *Forbes v. City of Ashland,* 246 Ky. 669, 55 S.W.2d 917, 919 (1932). We hold that family exclusions have such an effect and are against public policy.

It has long been recognized that:

> The public policy must be looked for in the Constitution and statutes and the decisions of the courts of last resort of a state, and where there is no legislative prohibition of a certain character of agreement before a court is authorized to declare it void, it must appear that such an agreement or contract has a tendency to injure the public or is against the public good, or is contrary to sound policy. . . .

*City of Princeton v. Princeton Elec. Light & Power Co.*, 166 Ky. 730, 179 S.W. 1074, 1078 (1915).

Because neither our Constitution or statutes address family exclusions, we turn to the decisions of this court to determine the public policy of our Commonwealth. The fair compensation for injuries received by innocent victims of another's negligence is the controlling policy consideration underlying both our abrogation of intrafamily immunities and the doctrine of reasonable expectations. Family exclusions are injurious to a substantial segment of the citizens of our Commonwealth. They deny injured persons the ability to rely upon the insurance coverage purchased by the policyholder. As a result, seriously injured accident victims will suffer financial hardship if family exclusion clauses are validated. Almost every member of the public is potentially a member of this excluded class. The exclusion is overly broad, based upon surmise, and against the public good.

It is time for us to take the next logical step from *Bishop.* Thus, we hold that family exclusion provisions in liability insurance contracts violate the public policy of this Commonwealth and are unenforceable. Accordingly, *Staser, supra,* and other cases which uphold the validity of the family exclusion are overruled.

■ Having found the family exclusion provision violates public policy, we hold the offending clause is separable from the remaining contractual provisions and the balance of the insurance contract is enforceable.

It is a very well established principle that where a contract contains valid and invalid clauses or conditions, and the good may be separated from the bad without affecting the integrity of the contract as a whole, the unlawful part of the contract may be eliminated and the balance of it upheld.

*General Accident, F. & L. Assur. Corp. v. Louisville H.T. Co.*, 175 Ky. 96, 193 S.W. 1031 (1917).

For the reasons contained in this opinion, the decision of the Court of Appeals is reversed. The summary judgment entered against Angel Lewis is set aside and the matter remanded to the Campbell Circuit Court.

KING, STUMBO and WINTERSHEIMER, JJ., concur.

LAMBERT, J., concurs in result only by separate opinion with GRAVES, J., joining that concurrence.

STEPHENS, C.J., dissents by separate opinion with BAKER, J., joining that dissent.

BAKER, J., dissents by separate opinion with STEPHENS, C.J., joining that dissent.

LAMBERT, Justice, concurring in result only.

The only rationale advanced in favor of upholding a family exclusion on sums exceeding the statutory minimum is to prevent the possibility of collusion by family members to defraud insurance companies. This is simply an insufficient basis to sustain the exclusion. Long ago in *Brown v. Gosser*, Ky., 262 S.W.2d 480 (1953), we forcefully declared that the courts of this Commonwealth are not so ineffectual as to be unable to detect fraud in such circumstances.

When the foregoing is acknowledged, the only other reason for the exclusion is to limit the amount of liability insurance underwritten. In other words, application of a family exclusion in circumstances such as these has the effect of reducing a $100,000 policy to a $25,000 policy. In my view, such a reduction may not be accomplished in this manner. In general, when an insurance carrier writes a $100,000 policy, it should be required to furnish that amount of coverage unless sustainable public policy authorizes a different result. *See Chaffin v. Kentucky Farm Bureau Ins. Co.*, Ky., 789 S.W.2d 754, 757–58 (1990).

One of the motivations for purchasing liability insurance in sums exceeding that which is required by law is to provide funds to compensate those whom a tortfeasor may catastrophically injure. Of course, such a

purchase also has the benefit of protecting a tortfeasor's assets to the extent of available insurance coverage. To one who is motivated by a desire to compensate those whom he may negligently injure, a policy provision which reduces to the minimum coverage for his family members, those who are at once most likely to be injured by the tortfeasor's negligence and dearest to him, is an absolute contradiction. However, by virtue of the packaging and selling of insurance products as providing the greater policy limit, purchasers are misled into believing that the higher limit applies to all whom they may injure when in fact it applies only to strangers. Whether by the doctrine of ambiguity or reasonable expectations, such a contract must be reformed.

The majority characterizes its opinion is "the next logical step" from *Bishop v. Allstate Insurance Co.*, Ky., 623 S.W.2d 865 (1981). In my view the majority has overruled *Bishop* and I believe that it should say so. In *Bishop,* we held that a family exclusion clause violated public policy due to its conflict with the mandate of the General Assembly to secure minimum tort liability coverage. A logical inference from what the *Bishop* court did not say but surely implied is that family exclusions denying coverage for all amounts in excess of the minimum coverage are not contrary to public policy. *Staser v. Fulton,* Ky.App., 684 S.W.2d 306 (1984). I see the majority opinion as hopelessly in conflict with *Bishop.*

The majority has expansively articulated its view of this Court's role in the development of public policy. It has broadly undertaken to adjust economic relations to achieve its view of economic fairness with what seems to be too little regard for the role of the legislative branch and for this Court's prior decisions. This Court is not vested with such a broad charter with respect to public policy. It should limit itself to appropriate adjustment when a prevailing rule of law lacks a sufficient justification for its continued existence. *D & W Auto Supply v. Department of Revenue,* Ky., 602 S.W.2d 420 (1980).

In my view, this is just such a case and calls for a modification of the existing rule. Collusion as a justification for an exclusion has been denounced and determined to be demonstrably false. When this invalid justification is accompanied by an affirmative misleading, there is reason enough to invalidate the policy provision.

However, I would reach a different result if the insurance carrier could show that the insured had knowingly determined to purchase less liability coverage for claims brought by family members than for claims brought by strangers. For legitimate underwriting reasons a distinction could be made and parties would be entitled to distinguish between potential claimants, provided, of course, that the statutory minimum was satisfied as to all as required by *Bishop v. Allstate Insurance Co.*, Ky., 623 S.W.2d 865 (1981).

GRAVES, J., joins this concurring opinion.

STEPHENS, Chief Justice, dissenting.

Although the majority opinion is extremely well written and persuasive, I must dissent for two reasons. First, I do not believe it is the prerogative of this Court to set public policy for the Commonwealth. Secondly, I do not believe it prudent to overrule the decisions of *Bishop v. Allstate Ins. Co.*, Ky., 623 S.W.2d 865 (1981), and *Staser v. Fulton,* Ky.App., 684 S.W.2d 306 (1984).

It is a well settled principle that "the Courts should use extreme caution in declaring a transaction to be void on the ground that it is against public policy." *Kentucky State Fair Board v. Fowler,* 310 Ky. 607, 221 S.W.2d 435, 439 (1949). Moreover, "we adhere to the principle that the establishment of public policy is the prerogative of the General Assembly." *Reda Pump Co., A Div. of TRW, Inc. v. Finck,* Ky., 713 S.W.2d 818, 821 (1986). The majority opinion interprets the legislature's silence on the matter of family exclusions as an invitation to declare public policy in this area. The legislature, in adopting and revising the MVRA, had ample

opportunity to prohibit a family exclusion clause in automobile insurance policies. Because they did not, the legislature's silence should be interpreted as acceptance.

There is no question that the doctrine of *stare decisis* has often been overcome when this Court finds that the "theory supporting a rule of law is not grounded on facts, or upon sound logic, or is unjust, or has been discredited by actual experience." *D & W Auto Supply v. Department of Revenue*, Ky., 602 S.W.2d 420, 424 (1980). While the majority opinion is eloquent in maintaining a variety of reasons why the family exclusion should fall, I do not find that the above-mentioned criteria has been met. Therefore, I would not overrule *Bishop, supra,* or *Staser, supra.*

BAKER, J., joins this dissenting opinion.

BAKER, Justice, dissenting.

I join the Chief Justice in his dissenting opinion. As a matter of public policy the majority states a compelling case. This, however, is a decision for the General Assembly, whom the people choose to determine public policy. With proper respect for the separation of powers which delineate the roles of the General Assembly and the Court of Justice, this Court should not intervene.

As stated in *Fann v. McGuffey,* Ky., 534 S.W.2d 770, 779 (1975),

It is elementary that the legislative branch of government has the prerogative of declaring public policy and that the mere wisdom of its choice in that respect is not subject to the judgment of a court.

STEPHENS, C.J., joins dissent.