AMERICAN NATIONAL FIRE INSURANCE COMPANY, Appellant,

v.

AETNA CASUALTY AND SURETY COMPANY and Bituminous Fire and Marine Insurance Company, Appellees.

Court of Appeals of Kentucky.

Feb. 4, 1972.

Richard H. Lewis, Lovett & Lewis, Benton, for appellant.

Edward H. Johnstone, Johnstone & Eldred, Princeton, B. M. Westberry, Marion, for appellees.

J. DOUGLAS GRAHAM, Special Commissioner.

The appellant, American National Insurance Company (hereinafter American), settled a tort claim and judgment against one Charles Thornton and then brought this action for reimbursement against the appellees, Aetna Casualty and Surety Company (hereinafter Aetna) and Bituminous Fire and Marine Insurance Company (hereinafter Bituminous). American appeals from a judgment denying recovery against either Aetna or Bituminous.

On August 15, 1962, Charles Thornton, a son of E. W. Thornton and a member of his household, was involved in an automobile accident in Caldwell County, Kentucky. At the time of the accident E. W. Thornton owned a 1959 Mercury automobile which was insured by a liability insurance policy issued by American and his son Charles was named in the policy and covered as an insured driver. This policy provided, among other things, that the residents of the household of E. W. Thornton were covered as "persons insured" with respect to the insured car or temporary substitute automobile and also with respect to a "non-owned" automobile being used with permission of its owner.

For several months prior to the accident E. W. Thornton had been employed as an office manager of Ruby, Chandler and Jordan Coal Company and this company had furnished him a 1957 Ford station wagon for his use in the business to drive to and from work. This station wagon had insurance coverage under a liability policy issued by Bituminous which provided, among other things, coverage for "any person while using the owned or hired vehicle provided the actual use is by the named insured or with his permission." The term "hired automobile" was defined as an automobile loaned to the named insured.

Charles Thornton had been using this Ford station wagon to drive to and from his work on a job entirely unrelated to the business of his father or his father's employer, Ruby, Chandler and Jordan. A few days before the date of the accident it became incapacitated and required major mechanical repair, and Charles Thornton took the vehicle to Madisonville Motors for repair. Ruby, Chandler and Jordan authorized repair of the vehicle and as a customary courtesy a 1955 Mercury owned by Madisonville Motors was furnished for Charles Thornton to drive while the Ruby, Chandler and Jordan vehicle was being repaired.

On the next day Charles Thornton was involved in an automobile accident while driving the 1955 Mercury loaned to him by Madisonville Motors. The 1955 Mercury was insured by a garage liability policy issued by Aetna to Madisonville Motors, which provided liability coverage only where no other valid collectible insurance was available.

As a result of the accident an action was instituted against Charles Thornton and a judgment for $35,000 was obtained. American entered the case and obtained a settlement for $6,000. Both Aetna and Bitumi-

nous were invited and requested to enter the negotiations and both refused to enter the case or take any action or pay any part of the judgment or claim.

In this action, as we have said, American after making the settlement, demanded reimbursement from Aetna and Bituminous. The case was submitted to the trial court upon depositions and briefs. The lower court found that the automobile driven by Charles Thornton was covered by the liability insurance policies of both American and Aetna, but that Aetna was relieved of liability because its policy contained what is known as "the regular excess coverage clause." The court further found that Charles Thornton was not a permittee of Ruby, Chandler and Jordan, which was covered by the Bituminous policy.

Three questions are presented:

■ (1) Did the trial court err in finding that the insurance policy issued by American covering the 1959 Mercury extended to and provided coverage for the 1955 Mercury owned by Madisonville Motors and being driven by Charles Thornton?

American contends that its policy did not cover Charles Thornton with respect to the 1955 Mercury owned by Madisonville Motors because, it says, that car was not a "non-owned" automobile as defined in the policy. The pertinent provisions of the policy are as follows:

"The following are insureds under Part I:

(a) with respect to the owned automobile,

(1) the named insured and any resident of the same household,

(2) any other person using such automobile with the permission of the named insured—

(b) with respect to a non-owned automobile,

(1) the named insured,

(2) any relative—provided his actual operation—or use thereof is with the permission—of the owner and is within the scope of such permission—

'owned automobile' means

(a) a private passenger—automobile described in this policy—

(d) a temporary substitute automobile.

'temporary substitute automobile' means any automobile—not owned by the named insured, while temporarily used with the permission of the owner as a substitute for the owned automobile—when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction. 'non-owned automobile' means an automobile—not owned by or furnished for the regular use of either the named insured or any relative, other than a temporary substitute automobile."

American's argument is that the foregoing provisions limit coverage of non-owned automobiles to these two situations:

(1) where the non-owned vehicle is not furnished for the regular use of the named insured or member of his household, and

(2) where the non-owned vehicle is a "temporary substitute automobile" for the owned automobile [in which event, of course, it comes within the definition of an "owned automobile"].

Thus far its reasoning appears to be correct. But the next step in the argument is that because the 1955 Mercury had been loaned as a substitute for the coal company's Ford station wagon, which in turn had been furnished for the regular use of the named insured (E. W. Thornton), the garage company's 1955 Mercury also must be considered as having been furnished for his regular use. This is where we fall out.

Conceding for the sake of the argument that American's policy would not have covered Charles Thornton while he was operating the car furnished by the coal com-

pany for his father's regular use, it does not follow that it did not cover him while using the garage company's automobile. That particular automobile certainly was not furnished for the regular use of Charles, his father, or anyone else. It falls literally and exactly within the terms of those provisions of the policy defining the word "insured" with respect to a non-owned automobile. It was a temporary, casual use with express permission of the owner, the garage company.

■ (2) Did Aetna become obligated to pay any part of this claim under the Garage Liability Policy covering the 1955 Mercury car that was involved in the collision?

Since this policy covered the loaned car it became effective, but it contained a clause excluding liability where there was other collectible insurance. There was other collectible insurance and the trial court properly found that Aetna sustained no liability under the policy. It was clearly the intention of that company, when the policy was issued, not to become obligated to pay for claims covered by other insurance.

■ (3) Some question was raised concerning the policy Bituminous had issued to Ruby, Chandler and Jordan.

The pertinent provisions of this policy would make the insurance company liable to reimburse any driver for loss while using an owned automobile or hired automobile provided the actual use of the automobile was by the named insured or with its permission.

The evidence shows that Ruby, Chandler and Jordan furnished the 1957 Ford station wagon to E. W. Thornton for his use to drive to and from the company office where he worked for the company; that it was a policy of the company to furnish the car only for use upon the company's business, but the company had knowledge that the vehicle had, on some occasions, been used by other members of the Thornton family including Charles Thornton. No specific objection had been made to this use, but the company had no knowledge the vehicle had been used by Charles Thornton to drive to his work on a job unrelated to the company's business, and they did not know that Madisonville Motors had furnished Charles Thornton a car to drive while the company's car was being repaired.

The trial court in its findings of fact stated, "While the evidence permits the court to infer that Charles Thornton's use of the 1957 Station Wagon belonging to Ruby, Chandler and Jordan Coal Company was with the Company's permission, the evidence does not establish that Charles Thornton's use of the Madisonville Motors' 1955 Mercury was with Ruby, Chandler and Jordan Coal Company's permission."

The evidence in the case establishes that Ruby, Chandler and Jordan Coal Company had knowledge that this car had been used by Charles Thornton outside the business of the Company and it had not objected to said use, but the court finds nothing in the record to show that Ruby, Chandler and Jordan ever granted such permission or that it knew the extent to which Charles was using the car. Mere knowledge of the unauthorized use of a company's vehicle is not sufficient to give consent for use under the terms of this policy. Under the clause known as "Omnibus Clause" permission to operate the vehicle may be implied, but as a general rule permission to an employe to use his employer's vehicle does not encompass substantial deviations from the purpose of the permission. Maryland Casualty Co. v. Hassell, Ky., 426 S.W.2d 133, 138 (1968).

The judgment is affirmed.

All concur.